UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONICA HALEY, | CASE NO. C09-1494 RSM |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| ALLSTATE INSURANCE COMPANY, INC., a foreign corporation doing business in the State of Washington, | |
| Defendant. | |

## I. INTRODUCTION

This case comes before the Court upon Allstate's Motion for Summary Judgment (Dkt. #11). Plaintiff contends that Allstate, her father's car insurance company, is liable for damages sustained from a May 2005 car accident in which she was injured and for the adjustment of her Automobile Medical Payments ("MedPay") and Uninsured Motorist ("UM") claims thereafter. Specifically, Plaintiff alleges bad faith, negligence, negligent infliction of emotional distress ("NIED"), and violation of Washington's Insurance Fair Conduct Act ("IFCA"), violations of

Washington's Consumer Protection Act ("CPA"), and breach of contract.  (Dkt. #2).  Allstate

argues that each of Plaintiff's claims fail as a matter of law.  This Court GRANTS IN PART and

DENIES IN PART Allstate's Motion for Summary .

## II. DISCUSSION

**A.  Background**

On May 24, 2005, Plaintiff Monica Haley was involved in a car accident with an

uninsured motorist, sustaining damage to the right side of her father's vehicle.  (Dkt. #12, Ex. A).

Plaintiff was covered by an Allstate insurance policy providing property, MedPay and UM

benefits.  (Dkt. #12, Ex. E).  Ten days after the accident, Plaintiff sought medical treatment for

injuries sustained in the accident.  (Dkt. #12, Ex. B).  Plaintiff's physician submitted the medical

bill to Allstate for treatment, at which point Allstate opened a MedPay claim on behalf of the

Plaintiff.   (Dkt. #13, Ex. 1,, p. 01881-82).  Allstate paid $6,349.70 in MedPay benefits related to

Plaintiff's May 2005 accident.

In October 2005, Allstate notified Plaintiff that the payment of her medical bills would be

suspended pending an Independent Medical Examination ("IME") of her injuries.  On November

14 and 15 Plaintiff submitted to two IMEs at Allstate's request.  The IMES were conducted by

Dr. McCormack and Dr. James.   Dr. McCormack's IME report stated that Plaintiff's cervical

straining injury was related to the automobile accident on a more probable than not basis.  (Dkt.

#12, Ex. G).  It also stated that Plaintiff's other injuries (interscapular, shoulder, elbow, groin,

knee and ankle pain/injuries) were not thought to be related to the collision. *Id.*  Dr. James'

report stated that most of Plaintiff's injuries (cervical strain/sprain, headaches, and shoulder,

knee and scapular pain) were related to the auto accident on a more probable than not basis.  (*Id.,*

Ex. H).  The only injury that Dr. James did not attribute to the accident was Plaintiff's peripheral

sensory neuropathy, which she attributed to Plaintiff's childhood diabetes.  *Id.*  Both doctors'

reports stated that Plaintiff had reached maximum medical improvement and did not need further

treatment.  (*Id.*, Exs. G, H).  In December, 2005, Allstate closed Plaintiff's MedPay claim based

on the medical determinations expressed in the IME reports.  (Dkt. #13, Ex. 1,, Ex. 1, p. 01891).

Plaintiff asserts, without providing supporting evidence, that after the termination of her MedPay

benefits, scar tissue developed on the back of her neck, resulting in an "unsightly hump" which

has required ongoing medical treatment and will require medical treatment in the future.  (Dkt.

#24, p. 5).

       In December 2005, Plaintiff informed Allstate that she wanted to settle her UM claim.

(Dkt. #13, Ex. 1, p. 01893).  Allstate informed Plaintiff that it would review the IME reports in

calculating the value of her UM claim.  (*Id.*, p. 01893).  On January 20, 2006, Allstate offered

Plaintiff $3,700 to settle her UM claim.  (*Id.,* p. 01893-94).  On January 25, 2006, Allstate

received an attorney representation letter from the Plaintiff.  (*Id.*, p. 01894).  Allstate renewed its

settlement offer to the Plaintiff's attorney the following day. (*Id.,* p. 01894, 01838).  In

December 2006, Plaintiff sent Allstate a settlement demand of $36,753.20. (*Id.*, p. 1895).

       Allstate and Plaintiff continued to disagree about the amount owed under Plaintiff's UM

policy.  The insurance contract provided for resolution of disputed UM claims in a court of

competent jurisdiction.  (Dkt. #12, Ex. E, p. 73).  In March 2007, Plaintiff filed suit against

Allstate to determine the value of her UM claim.  (Dkt. #13, ¶5).  The case was transferred to

mandatory arbitration and, in December 2008, the arbitrator awarded plaintiff $45,000.  (Dkt.

#12, Ex. J).  Allstate requested a trial de novo.

       At trial, Allstate presented the testimony of Dr. McCormack, who had conducted one of

Plaintiff's IMEs.  (Dkt. #12, ¶ 6).  Plaintiff asserts and Allstate does not dispute that the jury was

1   not made aware of the second IME report prepared by Dr. James.  Allstate's basis for excluding

2   Dr. James' report on at least one occasion was that Dr. James was "a consulting expert and is not

3   testifying.  As such, her report is work product and not admissible."  (Dkt. #12, Ex. K).  The jury

4   ultimately returned a verdict of $24,056.70. (Dkt. #25, Ex. K).  Allstate paid the judgment in full.

5   (Dkt. #12, Ex. Q).

6         Plaintiff filed the instant action in Washington state court on September 16, 2009.

7   Plaintiff alleges bad faith, negligent infliction of emotional distress,[1] violation of the Insurance

8   Fair Conduct Act, Consumer Protection Act violations, and breach of contract in Allstate's

9   handling of her MedPay and UM claims.  (Dkt. #2).  Allstate removed the action to this Court

10   based on diversity jurisdiction under 28 USC § 1332.

11 **B.  Standard of Review**

12         Summary judgment is appropriate where "the pleadings, the discovery and disclosure

13   materials on file, and any affidavits show that there is no genuine issue as to any material fact

14   and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); *Anderson v. Liberty*

15   *Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The Court must draw all reasonable inferences in favor

16   of the non-moving party.  *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir.

17   1992), *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a

18   "sufficient showing on an essential element of her case with respect to which she has the burden

19   of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In

20   ruling on summary judgment, a court does not weigh evidence to determine the truth of the

21   matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*,

22

23 _____

24   [1] Plaintiff's complaint included a cause of action for negligence but Plaintiff has since clarified
  that her claim is for negligent infliction of emotional distress. (Dkt. #24, p. 10).

41 F.3d 547, 549 (9th Cir. 1994) (*citing O'Melveny & Meyers*, 969 F.2d at 747).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson,* 477 U.S. at 248.

In this diversity case, the Court applies Washington substantive law.  *Eerie Railroad Co. v. Tompkins,* 304 U.S. 6 (1938)*; Kabatoff v. Safeco Ins. Co. of America,* 627 F.2d 207, 209 (9th Cir. 1980).

**C.  Allstate's Request to Strike Material Contained in Plaintiff's Motions and Briefs**

In its Reply (Dkt. #37), Allstate requests that the Court strike portions of Kathryn Majnarich's declaration (Dkt. #25), portions of Monica Haley's declaration (Dkt. #26), and portions of Rob Dietz's declaration and report (Dkt. # 31).  Plaintiff failed to file or seek leave to file a surreply to respond to Allstate's request to strike.  The Court is permitted to consider a party's failure to oppose a motion as an admission that the motion has merit.  *See* Local Rule CR 7(b).

Upon reviewing the disputed evidence, the Court finds that the evidence is rife with (a) conclusions of law and legal argument inappropriately couched as expert testimony, (b) inadmissible hearsay under Fed. R. Evid. 801 and 802, and (c) evidence that is not rationally based on the perception of the witness or is not helpful to the determination of a fact at issue in violation of Fed. R. Evid. 701.  Further, the disputed evidence is largely irrelevant to the ultimate issues in this Order, including whether Plaintiff's tort claims were barred by the statute of limitations; whether Plaintiff raised a genuine issue of material fact regarding whether Allstate acted in bad faith in failing to disclose Dr. James' IME report in the UM litigation; whether the IFCA applies retroactively to Plaintiff's denial of insurance benefits; whether Plaintiff's injuries constitute injury to business or property under the Washington CPA; and whether Plaintiff raised a genuine issue of material fact regarding whether Allstate breached the insurance contract.

1   Accordingly, the Court exercises its discretion to construe Plaintiff's failure to respond to

2   Defendant's request to strike as an admission that the request has merit and GRANTS Allstate's

3   request to strike portions of the above-identified report and declarations.

4   **D.  Statute of Limitations**

5        Allstate argues that Plaintiff's claims for bad faith and negligence in Allstate's handling

6   of Plaintiff's MedPay and UM claims are barred by the statute of limitations (Dkt. # 11, pp. 10-

7   16; Dkt. # 37, p.9), and that Plaintiff's claims for intentional infliction of emotional distress fail

8   as a matter of law (Dkt. #11, p. 20-21).  Plaintiff does not respond to Allstate's arguments

9   regarding the statute of limitations and asserts that she is claiming negligent (rather than

10   intentional) infliction of emotional distress arising out of her mistreatment by Allstate. (Dkt. #24,

11   p. 20).

12        An action for bad faith handling of insurance claims sounds in tort.  *Safeco Ins. Co. of*

13   *Am. V. Butler,* 118 Wn.2d 383 (Wash. 1992).  There is a three-year statute of limitations for tort

14   claims under Washington law.  RCW 4.16.080.   The general rule in a personal injury action is

15   that the cause of action begins to accrue when the act or omission causing the injury occurs.  *See*

16   *Gevaart v. Metco Const., Inc.,* 111 Wash.2d 499, 501 (Wash. 1998).  Plaintiff alleges injuries

17   stemming from  Allstate's misrepresentation of the IME process, failure to provide complete

18   information to the examiners, misrepresentation of the nature of the accident to the examiners,

19   failure to include Dr. James' report in the valuation of Plaintiffs' MedPay claim, and early

20   termination of Plaintiff's MedPay benefits.  (Dkt. #24, pp. 11-12).  The latest of these events –

21   closing Plaintiff's MedPay claim – occurred in December of 2005.  (Dkt. #13, p. 01891).

22   Plaintiff's claims for bad faith and negligence in handling her MedPay claim therefore began to

23   accrue, at the latest, in December 2005.  Since the instant complaint was filed more than three

24   years after, in September 2009, her claim for bad faith in the handling of her MedPay claim is

1   time-barred. Therefore, Allstate's Motion for Summary Judgment with respect to Plaintiff's

2   claim of bad faith in handling her MedPay claim is GRANTED.

3       Plaintiff also alleges injuries stemming from Allstate's bad faith in valuing her UM

4   claim.  Specifically, Plaintiff alleges that Allstate failed to consider Dr. James' "more favorable"

5   IME report in calculating the value of her UM claim and that it continually made unreasonably

6   low settlement offers.  (Dkt. #24, pp. 12-13).   Allstate first contacted Plaintiff with a settlement

7   offer in January 2006. (Dkt. #13, Ex. 1,, pp. 01893; Dkt. #21, Ex. H).  This settlement offer was

8   based on a Collosus valuation, in which it is not clear whether Dr. James' report was fully taken

9   into account.  (Dkt. #25, Ex. I). Nonetheless, Plaintiff should have been on notice as of the date

10  of the first settlement offer that she potentially had a claim against Allstate for the bad-faith

11  handling of her UM claim.  *See Greene v. Young,* 2008 WL 2779015 at*16 (Wash. App. Div. 1

12  July 14, 2008) (holding that plaintiff's cause of action for bad faith handling of an insurance

13  claim began to accrue when the first of several allegedly late payments was made).  Indeed, that

14  same month, Plaintiff notified Allstate that she was being represented by an attorney.  (Dkt. #13,

15  Ex. 1,, p. 01894).  Therefore, Plaintiff's bad faith claim arising out of Allstate's failure to include

16  Dr. McCormack's IME report in its initial valuation of Plaintiff's UM claim and its allegedly

17  unreasonably low settlement offers is time-barred.  The Court GRANTS Allstate's Motion for

18  Summary Judgment with respect to Plaintiff's bad faith claim arising out of Allstate's valuation

19  of her UM claim.

20      Plaintiff also asserts a bad faith claim with respect to Allstate's "comingling" of her

21  MedPay and UM files.  She alleges that Allstate should not have used the IMEs, which were

22  conducted to determine the extent of her MedPay benefits, in defending against Plaintiff's UM

23  claim.  (Dkt. #2, ¶3.10).  Allstate asserts, and Plaintiff does not dispute, that Allstate's

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 7

1  representative notified Plaintiff by phone on December 15, 2005 that it would be obtaining her

2  IME report from her MedPay file in order to come up with a settlement offer of her UM claim.

3  (Dkt. #13, Ex. 1, p. 01893).  Plaintiff's failure to bring her claim for injuries arising out

4  Allstate's comingling of her files within the three year statute of limitations renders this claim

5  time-barred.[2]  The Court GRANTS Allstate's Motion for Summary Judgment with respect to

6  Plaintiff's bad faith claim arising out of Allstate's comingling of Plaintiff's MedPay and UM

7  files.

8      Finally, the Court does not reach the merits of Plaintiff's claim for negligent infliction of

9  emotional distress ("NIED") since it is also time-barred.  (Dkt. #24, p. 20).  A claim for NIED is

10  also subject to the three-year statute of limitations of RCW 4.16.080.  Plaintiff makes the

11  following declaration to support her claim for NIED:

12      During the entire time I dealt with Allstate, I had difficulty sleeping.  I had
       strained relationships with friends and family.  I felt like a criminal, because
13      Allstate treated me like one.  I felt worthless and mistrustful. I sought legal
       counseling instead of emotional counseling because I wanted help dealing with
14      Allstate, not only help with my feelings about Allstate.

15  (Dkt. #20, ¶9).  Since Plaintiff's emotional injuries allegedly spanned the entire time she dealt

16  with Allstate, her claim for NIED began to accrue when she first filed her MedPay and UM

17

18

19  [2] Moreover, comingling the UM and MedPay files likely would not have given rise to a claim for
   bad faith.  *See Kim v. Allstate Ins. Co.*, 153 Wn. App. 339 (Wash. App. Div. 2 2009) (holding, in
   dicta, that Allstate did not act in bad faith when it simultaneously investigated the insured's

20  MedPay and UM claims).  In defending against a UM claim, the insurer "stands in the shoes" of
   the third-party tortfeasor.  *Ellwein v. Hartford Acc. and Indem. Co.*, 142 Wash.2d 766, 779-780

21  (Wash. 2001), *overruled on other grounds by Smith v. Safeco Ins. Co.,* 150 Wash.2d 478 (Wash.
   2003).   In Washington state court, a third-party tortfeasor would have been able to compel an

22  IME of the Plaintiff and/or compel the discovery of the IME(s) conducted by Allstate in the
   settlement of Plaintiff's MedPay claim.  *See generally* Sup. Ct. CR 35.  In addition, Plaintiff

23  expressly authorized Allstate to obtain medical information from "all persons with knowledge of
   my medical history." (Dkt. # 13, Ex. 1,, p. 00715).  Therefore, a claim for bad faith arising out

24  of the comingling of Plaintiff's MedPay and UM files would have failed as a matter of law.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 8

claims with Allstate, in May 2005.  (Dkt # 13, Ex. 1,, p. 01878-1880).  As such, any NIED claim is time barred.  This Court GRANTS Allstate's Motion for Summary Judgment with respect to Plaintiff's NIED claim.

**E.  Bad Faith**

Plaintiff asserts that Allstate's conduct within the context of the UM arbitration and litigation also gives rise to a claim for bad faith. Specifically, Plaintiff claims that Allstate acted in bad faith by failing to disclose Dr. James' report to the arbitrator or to the jury.  (Dkt. # 13, Ex. 1,, p. 21; Dkt. # 2, ¶3.13).  Plaintiff fails to provide any evidence to substantiate the claim that Dr. James' report was not made available to the arbitrator during arbitration.  As such, that claim fails as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) ("The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.").  This Court GRANTS Allstate's Motion for Summary Judgment with respect to Plaintiff's bad faith and negligence claims arising out of Allstate's conduct during the arbitration of Plaintiff's UM claim.

There is a genuine issue of material fact regarding whether Allstate acted in bad faith by failing to disclose the second, more favorable IME report to the jury in the litigation over the value of Plaintiff's UM claim.  The relationship between the insurer and the insured in the settlement of a UM claim "is by nature adversarial and at arm's length." *Fisher v. Allstate Ins. Co.*, 136 Wash.2d 240, 249 (1998).  A UM insurer "stands in the shoes" of the tortfeasor and is entitled to assert the same liability defenses that the tortfeasor could.  *Ellwein v. Hartford Acc. & Indem. Co.,* 142 Wash.2d 766, 779-780 (Wash. 2001), *overruled on other grounds by Smith v. Safeco Ins. Co.,* 150 Wash.2d 478 (Wash. 2003).   The objective in UM litigation is to provide the insured with the same amount of coverage that it would have received from the tortfeasor had

1  the tortfeasor carried liability insurance.  *Id.* at 779-780.  Nonetheless, an insurer has a duty of

2  good faith to its insured and violation of that duty may give rise to a tort action for bad faith.

3  *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 484 (Wash. 2003).  The duty of good faith survives

4  the UM relationship.  *Ellwein*, 142 Wash.2d at 779-780.  To succeed on a bad faith claim, a

5  policyholder must show that the insurer's actions were unreasonable, frivolous, or unfounded.

6  *Smith,* 150 Wash.2d at 484.  An insurer is only entitled to a dismissal on summary judgment of

7  an insured's claim for bad faith if there are no disputed material facts pertaining to the

8  reasonableness of the insurer's conduct or the insurer is entitled to prevail as a matter of law

9  when viewing the facts in the light most favorable to the non-moving party.  *Id.*

10         Plaintiff claims that Allstate failed to reveal the existence of Dr. James' allegedly more

11  favorable report to the jury.  (Dkt. #2, ¶ 3.13).  She presents evidence that on at least one

12  occasion Allstate attempted to keep the report out of evidence.  (Dkt. #12, Ex. K; Dkt. #25, ¶ 18).

13  Allstate does not dispute that Dr. James' report was never shown to the jury.  Nonetheless,

14  Allstate asks the Court to determine that its conduct in excluding Dr. James' report "was

15  reasonable as a matter of law."

16         Allstate points to evidence that both reports "reached the same conclusion: plaintiff's

17  accident related medical condition was fixed and stable and she did not require further

18  treatment."  (Dkt. #37, p. 9).  If the Court considered this evidence alone, the decision not to use

19  Dr. James' report might be reasonable as a matter of law: including a second report would have

20  been redundant.  *See Smith,* 150 Wash.2d at 486 ("The insurer is entitled to summary judgment if

21  reasonable minds could not differ that its denial of coverage was based upon reasonable

22  grounds.").  However, while it is true that both reports reach the same *ultimate* conclusion, Dr.

23  James' report, unlike Dr. McCormack's, makes the *intermediate* conclusion that the majority of

24

1  Plaintiff's injuries are attributable to the May 2005 car accident.  (Dkt. #12, Ex. H).  While the

2  reports might have been redundant as to the appropriate date of termination of MedPay benefits,

3  it is conceivable that Dr. James' report would have supported greater non-economic damages in

4  the UM litigation than Dr. McCormack's report standing alone.  As such, Allstate's exclusion of

5  Dr. James' report is not *per se* reasonable; there is a genuine issue of material fact regarding

6  whether a jury would have awarded greater non-economic damages to Plaintiff had she been able

7  to offer Dr. James' report into evidence.

8          In addition, the record indicates that the reason given by Allstate on at least one occasion

9  for excluding Dr. James' report was that she was "a consulting expert and is not testifying.  As

10  such, her report is work product and not admissible."  (Dkt. #12, Ex. K).  Since a UM insurer

11  "stands in the shoes" of the third-party tortfeasor, it is entitled to make litigation decisions that

12  are ultimately unfavorable to the insured.  *Ellwein* 142 Wash.2d at 779-780.  However, the

13  insurer cannot leverage its dual-role as adversary and insurer solely to attempt to reduce the

14  award available to the plaintiff in UM litigation.

15          The objective in UM litigation is to determine how much the plaintiff would have been

16  awarded had the tortfeasor been fully insured and ostensibly represented by its own insurance

17  company.  *Id.*  If Plaintiff were litigating against an actual third-party tortfeasor, rather than

18  Allstate, Allstate likely would not have had the benefit of asserting work product privilege over

19  Dr. James' report.  Further, it likely would not have asserted work product privilege with respect

20  to Dr. James' report *even if it could*, since the additional report would have helped Plaintiff in her

21  case against the tortfeasor and would have reduced Allstate's own liability to the Plaintiff.

22  Allstate's selective assertion of the privilege over one report and not the other raises a genuine

23  issue of material fact regarding whether Allstate breached its duty of good faith towards the

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 11

1  Plaintiff.  *See Smith,* 150 Wash.2d at 486 ("[I]f there are material issues of fact with respect to

2  the reasonableness of the insurer's action, then summary judgment is not appropriate.")  The

3  Court DENIES Allstate's Motion for Summary Judgment with respect to Plaintiff's bad faith

4  claim arising out of Allstate's conduct during the UM litigation.

5  **F.  The Insurance Fair Conduct Act ("IFCA")**

6          The IFCA became law on December 6, 2007.  Codified at Revised Code of Washington §

7  48.30.015, the IFCA creates a new cause of action against insurance companies for unreasonably

8  denying claims and benefits and provides for treble damages and attorney's fees.  Several courts

9  have held that the IFCA does not apply retroactively.  *See Malbco Holdings LLC v. Amco Ins.*

10 *Co.,* 546 F. Supp. 2d 1130 (E.D. Wash. 2008); *Aecon Bldgs., Inc. v. Zurich N. Amer.,* 2008 WL

11 895978 (W.D. Wash. 2008); *Shepard v. Foremost Ins. Co.,* 2008 WL 51430224 (W.D. Wash.

12 2008); *HSS Enter. LLC v. Amco Ins. Co.,* 2008 WL 312695 (W.D. Wash. 2008).  Accordingly,

13 Plaintiff concedes that the IFCA does not apply to her MedPay claim.  (Dkt. #24, p. 14).

14 Plaintiff distinguishes her UM claim, however, from the above precedent on the basis that "the

15 adjustment (and bad faith handling) of the claim at issue continued after the effective date of the

16 Act" and "the complaint alleging the IFCA violation was filed after the effective date of the

17 Act."  *Id.*

18          The Court declines to distinguish the Plaintiffs' case from the mounting precedent

19 counseling against retroactive application of IFCA.  The statute provides a remedy for the

20 unreasonable denial of a claim for coverage or denial of benefits.  RCW § 48.30.015(1).  The

21 "precipitating event" giving rise to a cause of action under the statute occurred in January 2006

22 when Allstate first extended its allegedly unreasonable settlement offer, thus allegedly denying

23 Plaintiff insurance benefits she was due.  As such, IFCA cannot apply to Plaintiff's UM claim.

24 To hold otherwise would leave insurers liable for any claims opened before the enactment of the

1    IFCA, so as long as the plaintiff continued to dispute the appropriate settlement value.  Such a

2    result would contravene the intent of the Washington legislature in enacting the IFCA to avoid

3    creating retroactive liability.  *See Malbco Holdings,* 546 F. Supp. at 1130.  The Court GRANTS

4    Allstate's Motion for Summary Judgment with respect to Plaintiff's claim for violation of the

5    IFCA.

6    **G.  The Consumer Protection Act ("CPA")**

7             Plaintiff argues that Allstate violated Washington's CPA.  RCW 19.86.  To establish a

8    violation of the CPA, Plaintiff must establish five elements: (1) an unfair or deceptive act or

9    practice; (2) occurring within trade or business; (3) affecting the public interest; (4) injuring the

10   plaintiff's business or property; and (5) a causal relationship between Allstate's deceptive act and

11   the resulting injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d

12   778, 780 (Wash. 1986).  Plaintiff has failed to put forth evidence demonstrating an injury to her

13   business or property.  As a result, Plaintiff's CPA claim fails as a matter of law.

14            Plaintiff alleges that she incurred damage to her property in the form of attorney's fees

15   and costs related to litigating her UM claim in state court.  (Dkt. #24, p. 18).  Attorneys fees and

16   costs do not constitute property damages under the CPA.  *See Sign-O-Lite Signs, Inc. v.*

17   *DeLaurenti Florists, Inc*.  64 Wash.App. 553, 565-566 (Wash. App. 1992) (holding that

18   attorney's fees from the underlying, non-CPA litigation were not actual damages under the

19   CPA).  *Cf. Panag v. Farmers Ins. Co. of Washington,* 166 Wash.2d 27 (Wash. 2009) ("mere

20   involvement in having to ... prosecute a CPA counterclaim is insufficient to show injury to her

21   business or property.")

22            Plaintiff also alleges she suffered property damage by virtue of having to pay medical

23   bills for the treatment of her hump.  *Id.*  Personal injury damages are not compensable damages

24   under the CPA and do not constitute damage to property interests under the statute.  *Ambach v.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 13

1   *French,* 167 Wash. 2d 167, 173 (Wash. 2009).  Where Plaintiffs are both physically and

2   economically harmed by the same underlying action, Washington courts have failed to

3   characterize the economic damages as damages to a property interest under the CPA.  *Id.* at 174-

4   75; 179 ("[T]he CPA was not designed to give personal injury claimants such backdoor access to

5   compensation they were denied in their personal injury suits.").

6        Since Plaintiff's asserted damages related to attorney's fees, costs, and the payment of

7   medical bills do not constitute damage to Plaintiff's business or property under the CPA, this

8   Court declines to examine the remaining CPA factors and determines that Plaintiff's CPA claim

9   fails as a matter of law.  The Court GRANTS Allstate's Motion for Summary Judgment with

10  respect to Plaintiff's claim for violation of the CPA.

11  **H. Breach of Contract**

12       Plaintiff alleges that Allstate breached the insurance contract.  In the Complaint, Plaintiff

13  alleges that the breach occurred by Allstate "failing to abide by its terms and pay covered

14  damages."  (Dkt. #2, ¶ 5.3).  In her Opposition to Allstate's Motion for Summary Judgment,

15  Plaintiff states that "[t]he real question [with respect to the breach of contract claim] is whether

16  Allstate's methodology in valuing the claim and undervaluing Monica's non-economic damages

17  was reasonable and in good faith."  (Dkt. #24, p. 20).  Allstate has put forth evidence that the

18  insurance contract provided for resolution of disputed claims in a court of competent jurisdiction.

19  (Dkt. #12, Ex. E, p. 73).  Further, Allstate also presented evidence that it paid the jury verdict in

20  full.  (*Id.*, Ex. Q).  Plaintiffs have failed to point to evidence that would support its allegations

21  that Allstate either failed to pay covered damages or that its use of allegedly unreasonable

22  methodology in calculating Plaintiff's claims constitute a breach of the insurance contract.  There

23  is no genuine issue of material fact regarding whether Allstate's litigation of Plaintiff's UM

24

claim is consistent with the language of the insurance contract.  Accordingly, this Court

GRANTS Summary Judgment with respect to Plaintiff's Breach of Contract Claim.

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto,

and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Allstate's request to strike portions of the declarations and/or reports of

Kathryn Majnarich, Monica Haley, and Rob Dietz is GRANTED.

(2)  Allstate's Motion for Summary Judgment (Dkt. #11) is GRANTED in part

and DENIED in part.  All of Plaintiff's claims are dismissed except for her claim for bad faith

arising out of Allstate's conduct during the UM litigation.

(3) In light of this Order, the Court STRIKES Defendant's Motion for Protective

Order (Dkt. #14) and Plaintiff's Motion to Compel Discovery (Dkt. #18) and asks the parties to

update their briefing regarding discovery issues to reflect the sole remaining claim in this case.

(4) The Clerk is directed to forward a copy of this Order to all counsel of record.


October 13, 2010.




RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE